CASE No. 22-5567

---

# UNITED STATES COURT OF APPEALS

# FOR THE SIXTH CIRCUIT

---

## UNITED STATES OF AMERICA,

**Plaintiff-Appellant**

**v.**

## GERALD CAMPBELL,

**Defendant-Appellee**

---

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT, EASTERN DISTRICT
OF TENNESSEE, AT CHATTANOOGA

---

## APPELLANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF
## PETITION FOR REHEARING EN BANC
## OR PANEL REHEARING

Erin P. Rust
Assistant Federal Defender
Federal Defender Services of Eastern Tennessee, Inc.
605 Chestnut Street, Suite 1310
Chattanooga, Tennessee 37450
(423) 756-4349
Attorney for Gerald Campbell

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS............................................................................ ii

TABLE OF AUTHORITIES .................................................................... iii

ARGUMENT .............................................................................................1

    A.  Jeopardy has attached to Mr. Campbell's plea to § 922(g)(1)…………….2

    B.  By sentencing Mr. Campbell to an unindicted offense and in the absence of his Sixth Amendment jury trial right, the district court committed structural error…………………………………………………….3

    C.  Even if harmless error review could be utilized—it cannot—the error in this case is not harmless………………….……………………..8

    D.  The remedy is resentencing without the uncharged and unproven ACCA enhancement…………..………………………………..…...14

CONCLUSION ........................................................................................15

CERTIFICATE OF SERVICE ................................................................16

# TABLE OF AUTHORITIES

Page

**<u>Federal Court Cases</u>:**

*Alleyne v. United States*, 570 U.S. 99 (2013) ........................................................ 14

*Chapman v. California*, 386 U.S. 18 (1967)............................................................9

*Erlinger v. United States*, 144 S. Ct. 1840 (2024)............................................*passim*

*Maslenjak v. United States*, 582 U.S. 335 (2017).................................................. 6

*Mathis v. United States*, 579 U.S. 500 (2016) ....................................................... 10

*McFadden v. United States*, 576 U.S. 186 (2015) ................................................. 6

*Neder v. United States*, 527 U.S. 1 (1999)......................................................... 7-8, 9

*Recuenco v. Washington*, 548 U.S. 212 (2006) .................................................... 7-8

*Rose v. Clark*, 478 U.S. 570 (1986) ...................................................................1, 5, 8

*Ruan v. United States,* 597 U.S. 450 (2022) ...........................................................6

*Sullivan v. Louisiana*, 508 U.S. 275 (1993).......................................................... 5, 6

*United States v. Ausmus*, 774 F.2d 722 (6th Cir. 1985)……………………………12

*United States v. Barbour*, 750 F.3d 535 (6th Cir. 2014) ......................................... 9

*United States v. Bell*, 37 F.4th 1190 (6th Cir. 2022). ........................................... 2-3

*United States v. Doe*, 297 F.3d 76 (2d Cir. 2002) ................................................. 15

*United States v. Harris*, 200 F. App'x 472 (6th Cir. 2006) ................................... 12

*United States v. Hunt*, 656 F.3d 906 (9th Cir. 2011) ............................................ 15

*United States v. Jordan*, 531 F. App'x 995 (11th Cir. 2013) ...................................15

*United States v. Pena*, 742 F.3d 508, 514-20 (1st Cir. 2014).......................... 14-15

*United States v. Will*, 612 F. App'x 265 (6th Cir. 2015)…………………………..12

*United States v. Yancy*, 725 F.3d 596 (6th Cir. 2013) ............................................15

**Federal Statutes:**

18 U.S.C. § 922(g)(1)............................................................................................... 2

18 U.S.C. § 924(e) ("ACCA") ...........................................................................*passim*

21 U.S.C. § 841(a)(1)................................................................................................2

21 U.S.C. § 841(b)(1)(C) .........................................................................................2

**Rules:**

Federal Rule of Criminal Procedure 11(c)(1)(C)......................................................2

Federal Rule of Criminal Procedure 11(c)(5) ..........................................................2

Federal Rule of Evidence 802................................................................................ 11

Federal Rule of Evidence 803(22) ..........................................................................11

**Guidelines:**

U.S.S.G. § 1B1.3(a)(2) & cmt. (n.5(B)) .................................................................12

**Other Materials:**

Jury Instructions,
*United States v. Pennington*, No. 1:19-cr-455 (N.D. Ga. Sept. 20, 2022)
(Doc. 172) ..........................................................................................................13

Jury Instructions,
   *United States v. Willis*, No. 4:21-cr-548 (E.D. Mo. July 16, 2024).
   (Doc. 217) ........................................................................................................13

Jury Verdict Minutes
   *United States v. Willis*, No. 4:21-cr-548 (E.D. Mo. July 16, 2024)
   (Doc. 216) ........................................................................................................13

Phase II Jury Verdict,
   *United States v. Pennington*, No. 1:19-cr-455 (N.D. Ga. Sept. 20, 2022)
   (Doc. 173) ........................................................................................................13

# ARGUMENT

In *Erlinger v. United States*, the Supreme Court held that "there is no doubt" that the Fifth and Sixth Amendments require ACCA's "occasions different" question to be "resolved by a unanimous jury beyond a reasonable doubt." 144 S. Ct. 1840, 1851 (2024). The Court emphasized that "[j]udges may not assume the jury's factfinding function for themselves, let alone purport to perform it using a mere preponderance-of-the-evidence standard." *Id.* "To hold otherwise," "would intrude on a power the Fifth and Sixth Amendments reserve to the American people." *Id.* at 1852. This is true "regardless of how overwhelming the evidence may seem to a judge." *Id.* at 1856 (quoting *Rose v. Clark*, 478 U.S. 570, 578 (1986) (cleaned up)).

The Supreme Court was also clear that non-elemental facts in *Shepard* documents—such as the date and location of the offense—are not reliable sources of information and cannot, standing alone, form the basis of an "occasions different" finding. *Id.* at 1855-56 (explaining the "limited utility" of *Shepard* documents as they are "prone to error," which is "especially grave when it comes to facts . . . on which adversarial testing was 'unnecessary' in the prior proceeding," such as the "time or location of his offense").

Here, the government did not allege an ACCA enhancement in the indictment, and Gerald Campbell did not admit that the prior offenses occurred on separate occasions in his guilty plea. He was charged with and pled guilty *only* to the

unenhanced offense of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). And, at sentencing, he objected to the government's efforts to impose an enhanced sentence for a separate, aggravated ACCA offense. As explained next, double jeopardy prevents the government from punishing Mr. Campbell for the ACCA offense he never pled to. That compounded constitutional error is structural, requiring reversal. And, even if harmless error review applied (it does not), jury acquittals on the occasions-different question prove that the error is not harmless.

### E.   Jeopardy has attached to Mr. Campbell's plea to § 922(g)(1).

In light of *Erlinger*, it is now clear that jeopardy attached when the district court accepted Mr. Campbell's plea to the unenhanced offense of being a felon in possession of a firearm—the sole count of the indictment. *United States v. Bell*, 37 F.4th 1190, 1198 (6th Cir. 2022). That means the government can neither try him for the enhanced ACCA offense, nor punish him as if he had pled to it.

In *Bell*, the defendant was charged with distributing a controlled substance, resulting in death, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), but the government consented pursuant to a Rule 11(c)(1)(C) plea agreement to a plea to the lesser included offense of distributing in violation of 841(b)(1)(C), without the enhancement element of resulting in death. 37 F.4th in 1194. The district court accepted the plea but at sentencing rejected the plea agreement. Consistent with Fed. R. Crim. Proc. 11(c)(5), the court gave the defendant an opportunity to withdraw his

plea, which the defendant declined. The government objected, asking the court to set the matter for trial on the enhanced charge. The court declined.

On appeal, the government argued that the district court had erred in refusing to set the case for trial when it rejected the plea agreement. This Court affirmed. It held that because Mr. Bell pled guilty to all the charges and chose not to withdraw his plea, there were no remaining charges for which the government could proceed to trial. *Id*. at 1198. Jeopardy had attached when the district court accepted Mr. Bell's guilty plea. *Id*. "A subsequent reindictment for the greater included offense implicates double jeopardy concerns under the Fifth Amendment." *Id*. In short, trying a defendant for a greater offense after he has already pled guilty to a lesser offense, without objection (as occurred here), violates the Double Jeopardy Clause's bar on successive prosecutions. *Id*.; (TR Plea, R. 64, PageID #534, 546.)

Allowing one to be *sentenced* to the unindicted, greater offense in these circumstances perpetuates the same Double Jeopardy harm. The government cannot circumvent Mr. Campbell's Double Jeopardy rights under the guise of sentencing.

**F. By sentencing Mr. Campbell to an unindicted offense and in the absence of his Sixth Amendment jury trial right, the district court committed structural error.**

At sentencing, the district court overruled Mr. Campbell's argument that ACCA could be applied only if he had been charged with the enhanced crime and a jury found him guilty of it beyond a reasonable doubt (or he admitted it in his plea),

it then relied exclusively on non-elemental facts in the *Shepard* documents and made its "occasions different" finding by a mere preponderance of the evidence. This compounded error is structural, requiring remand for resentencing without ACCA's enhancement. Even if it is not structural, the government cannot use harmless error review to sentence Mr. Campbell to an offense for which he was not charged and did not plead guilty. And even if it could, at least two jury acquittals on the occasions-different question to date prove that the error is not harmless.

1. Mr. Campbell has an absolute, fundamental right, under the Fifth and Sixth Amendments to be sentenced with ACCA's enhanced penalties *only* after either a guilty plea, knowingly entered, wherein he intentionally admits all the elements of the enhanced offense or after a jury finds all the elements beyond a reasonable doubt. *Erlinger*, 144 S. Ct. at 1851-52. Where, as here, neither occurred but the district court imposed the ACCA sentence anyway, his jury trial right was wholly abridged. Because jeopardy has attached to his guilty plea to the unenhanced felon in possession of a firearm conviction, the government cannot now try him for the separate, greater included offense of ACCA—nor can it sentence him as if it had. His current ACCA sentence works a complete deprivation of his fundamental jury trial right and is therefore structural error.

The Supreme Court is very clear that when a right to jury trial is precluded entirely, the error is structural, and no harmless error analysis can be entertained.

*Rose*, 478 U.S. at 578 n.6 (examples "of errors that could never be harmless" include errors that "either aborted the basic trial process, or denied it altogether" (cleaned up and internal citations omitted)). As the Supreme Court explained, "[t]his rule stems from the Sixth Amendment's clear command to afford jury trials in serious criminal cases." *Id*. at 578 (citation omitted).

Nor can this error be overlooked based on judge-found facts. "Where [the Sixth Amendment right to a jury trial] is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; *the error in such a case is that the wrong entity judges the defendant guilty*." *Id*. (emphasis added). At the same time, "[h]armless-error analysis . . . presupposes *a trial*. . ." *Id.* at 578 (emphasis added); *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993). "The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, . . . it requires an actual jury finding of guilty." *Sullivan*, 508 U.S. at 279 (citations omitted).

2.    While the *Erlinger* majority did not directly address whether harmless error review applies, given its clear prior holdings in *Sullivan* and *Rose*, it didn't need to. The Court's holding in *Erlinger*, that individuals have a right to a jury trial on the enhanced ACCA offense compels the conclusion that the failure to provide that right is structural. *Sullivan*, 508 U.S. at 281-82 (deprivation of the right to a jury verdict *beyond reasonable doubt* is structural error).

The *Erlinger* Court's reliance on *Rose* when emphasizing the right to a jury trial, regardless of how overwhelming the evidence may seem to a judge, strongly suggests it views this error as structural. *Erlinger*, 144 S. Ct. at 1856 (citing *Rose*, 478 U.S. at 578). Six justices (the five justices who joined Justice Gorsuch's majority and a dissenting justice, Justice Jackson), declined to join Chief Justice Roberts's concurrence or Justice Kavanaugh's dissent, both of which advocated for harmless error review. By affirmatively declining to include a remand *for harmless error review*—the only point on which Chief Justice Roberts differed from the rest of the majority—the remaining five-justice majority, and Justice Jackson, rejected that premise. *See generally Erlinger*, 144 S. Ct. at 1848-52; *see also id.* at 1860-61 (Roberts, J., concurring) (writing only for himself that the circuit court should consider on remand whether the error was harmless).

When the Court intends for harmless-error review to apply, it says as much. *Ruan v. United States,* 597 U.S. 450, 467 (2022) (leaving "any harmlessness questions for the courts to address on remand"); *Maslenjak v. United States*, 582 U.S. 335, 352-53 (2017) ("In keeping with our usual practice, we leave that dispute [over harmlessness] for resolution on remand."); *McFadden v. United States*, 576 U.S. 186, 197 (2015) (same). By contrast, when the court rejects harmless-error review and instead finds the error to be structural, it remands "for proceedings not inconsistent with this opinion." *Sullivan*, 508 U.S. at 282. The Court's remand in

*Erlinger* aligns with the latter, remanding "for further proceedings consistent with this opinion." 144 S. Ct. at 1860.

3.     In Justice Kavanaugh's dissent (joined only by Justice Alito) he explained that he would have found any *Erlinger* error harmless. *Erlinger*, 144 S. Ct. at 1866-67 (Kavanaugh, J., dissenting). In setting forth his argument, he relied only upon *Recuenco v. Washington*, 548 U.S. 212 (2006) and *Neder v. United States*, 527 U.S. 1 (1999). *Id*. Tellingly, the dissent did not address *Sullivan* or *Rose* and it did not discuss how harmless error review would comport with the Double Jeopardy Clause. Moreover, its reliance on *Recuenco* and *Neder* is misplaced as both are distinguishable. Both post-date *Rose*, and in neither had jeopardy attached to a guilty plea to a separate offense.  In both, the Court held that the omission of an element (*Neder*) or penalty-enhancing sentencing factor (*Recuenco*) *in the jury instructions* was not structural error. In both cases, the defendant was *charged* with the offense at issue, including the omitted element, and *went to trial* on the offense as charged. And in neither did the harmless-error determination depend on evidence *not* admitted at trial, as would be required here.

Significantly, in subjecting these instructional omissions to harmless error review, the Court in both *Neder* and *Recuenco* quoted none other than *Rose v. Clark* as establishing the governing rule that the presumption of harmless-error analysis applies only "'*[i]f* the defendant  . . . was tried by an impartial adjudicator.'" *Neder*,

527 U.S. at 8 (quoting *Rose*, 478 U.S. at 579)); *Recuenco*, 548 U.S. at 218 (quoting *Neder* quoting *Rose*) (emphasis added). Given that the defendants in both *Neder* and *Recuenco* were tried by an impartial adjudicator, the presumption of harmless error applied. When the defendant is *not* tried by an impartial adjudicator, the presumption does not apply, and the error is instead structural. *Rose*, 478 U.S. at 577.

Here, Mr. Campbell was not charged with the ACCA aggravated offense, pled guilty to the single indicted count as-charged, and objected to being subjected to an enhanced punishment for an ACCA offense at sentencing. He was thus deprived altogether of the opportunity to be tried by an impartial adjudicator on the aggravated ACCA offense, rendering the error one of the rare few that are structural. *Rose*, 478 U.S. at 578 n.6. It can be no accident that the majority in *Erlinger* quoted and cited only that portion of *Rose* describing structural error, without mentioning the word "harmless" or citing *Neder* or *Recuenco*—even though the government asserted that harmless error review would properly apply in "most cases," and even though the amicus appointed by the Court to defend the judgment below likewise cited *Recuenco*. *See* U.S. Br. at 27-28, U.S. Reply Br. at 14, Amicus Br. in Support of Judgment at 50, *Erlinger*, 144 S. Ct. 1840. Because the error is structural, the Court cannot engage in harmless error review.

### C. Even if harmless error review could be utilized—it cannot—the error in this case is not harmless.

Even if the Court could engage in harmless error analysis—it cannot—the

error would be harmful, requiring reversal. Because Mr. Campbell objected in the district court that judicial fact-finding of the uncharged "occasions different" ACCA element was improper under the Fifth and Sixth Amendments, the government bears the burden to show these constitutional errors were harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967). The government can prove an error is harmless under this standard only when "it appears 'beyond a reasonable doubt that the error complained of did not contribute to *the verdict* obtained.'" *Neder*, 527 U.S. at 15 (quoting *Chapman*, 386 U.S. at 24 (emphasis added)). It cannot do so.

1. Importantly, the burden does not lie with Mr. Campbell in this harmless error context, nor was it *ever* his burden to disprove the enhancement under the governing rules of sentencing or at his guilty plea. *United States v. Barbour*, 750 F.3d 535, 543 (6th Cir. 2014). The burden lies with the government to amass reliable, *admissible* evidence proving beyond a reasonable doubt that the error did not contribute to his ACCA sentence. *Erlinger*, 144 S. Ct. at 1856. It is yet unknown what admissible evidence the government would present to prove the "occasions different" fact.

The inquiry in Mr. Campbell's case begins and ends with the district court's exclusive reliance on non-elemental information contained in *Shepard* documents to

find that Mr. Campbell's offenses occurred on different occasions, which plainly contributed to the (unindicted) aggravated ACCA sentence imposed. (Sent'g Tr., R. 63, PageID #499-500.) But as *Erlinger* establishes, relying on *Shepard* documents to decide whether offenses were committed on separate occasions is "exactly what the Fifth and Sixth Amendments forbid." *Erlinger*, 144 S. Ct. at 1855.

*Shepard* documents can be "prone to error." *Id.* at 1855 (quoting *Mathis v. United States*, 579 U.S. 500, 512 (2016)). This is especially true for facts that are irrelevant to the prior proceeding or simply not an essential element, *id.*, such as the offense's date or location. "As a matter of fair notice alone, old recorded details, prone to error, sometimes untested, often inessential, and the consequences of which a defendant may not have appreciated at the time, should not come back to haunt him many years down the road by triggering a lengthy mandatory sentence." *Id.* (cleaned up). With *Erlinger* expressly recognizing that *Shepard* documents are inherently unreliable when it comes to non-elemental information, the district court's (and panel's) prior reliance on non-elemental facts in the *Shepard* documents is not sufficient. A court cannot rely on unreliable information in *Shepard* documents alone to conclude *beyond a reasonable doubt* that an (imagined) jury would reach the same (imagined) verdict of guilty.

Even if the Court could rely on an imaginary jury—it cannot—it is far from clear that the information in the *Shepard* documents could be used as evidence. The

10

purported offense dates are not elements of his prior offenses so would likely be inadmissible hearsay, Fed. R. Evid. 802, 803(22), as well as a potential Confrontation Clause violation. Even if the government could prove different dates to the jury with admissible evidence (and even if the Mr. Campbell had admitted the dates—which he has not done knowingly under oath), the error still would not be harmless beyond a reasonable doubt, as the dates are not dispositive. The Supreme Court reemphasized in *Erlinger*, "no particular lapse of time or distance between offenses automatically separates a single occasion from distinct ones. *Often,* a qualitative assessment about the character and relationship of the offenses may be required. So may an inquiry into whether the crimes shared a common scheme or purpose." 144 S. Ct. 1840, 1855 (cleaned up) (emphasis added).

*Erlinger* itself illustrates why the error here is not harmless. Erlinger committed at least three burglaries that apparently spanned several days and targeted different businesses. *Id.* at 1847. Even so, the Supreme Court explained, "[p]resented with [reliable] evidence about the times, locations, purpose, and character of those crimes, a jury might have concluded that some or all occurred on different occasions. Or it might not have done so. All we can say for certain is that the sentencing court erred in taking that decision from a jury of Mr. Erlinger's peers." *Id.* at 1852.

2. While it is true that, before *Erlinger* the panel in this case distinguished Guideline findings of "same course of conduct or common scheme or plan" from the

question of different "occasions" under the ACCA, *Erlinger* makes clear that the substantive content of these inquiries are remarkably similar. Perhaps most important, in jury trials both before *Erlinger* and after, juries have acquitted defendants of the enhanced ACCA offense with jury instructions grounded in *Wooden* and *Erlinger's* language, and which echoed the language used in the Guidelines and legions of federal cases in which courts have found that offenses of a similar character but occurring months or years apart nevertheless share a common scheme or plan or reflect a single occasion.[1]

In *United States v. Pennington*, a case that pre-dated *Erlinger*, a jury acquitted Mr. Pennington of the enhanced ACCA offense when it found that his three prior

---

[1] *See* U.S.S.G. § 1B1.3(a)(2) cmt. (n.5(B)(i)) (two or more offenses may constitute part of a "common scheme or plan" if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi," even if they occur months apart); U.S.S.G. § 1B1.3(a)(2) cmt. (n.5(B)(ii)) (two or more offenses may constitute the "same course of conduct" "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses," considering factors as "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses" and giving example of a series of offenses of failing to file tax returns once a year); *e.g.*, *United States v. Will*, 612 F. App'x 265, 268 (6th Cir. 2015) (drug sale committed two years before the prosecuted drug offense was part of "same course of conduct"); *see also, e.g.*, *United States v. Harris*, 200 F. App'x 472, 509-10 (6th Cir. 2006) (defendant's pattern of failing to file tax returns in earlier years was part of "plan" or "course of conduct" so admissible under Fed. R. Evid. 404(b) to show intent); *United States v. Ausmus*, 774 F.2d 722, 727-28 (6th Cir. 1985) (not an abuse of discretion to admit evidence that defendant failed to pay taxes for years before and after the years charged in the indictment, to show a pattern, plan, or scheme)).

marijuana offenses were not separate occasions. Phase II Jury Verdict (Doc. 173), *United States v. Pennington*, No. 1:19-cr-455 (N.D. Ga. Sept. 20, 2022). The offenses appear to have occurred around January 18, 2005, June 10, 2013, and October 30, 2013—thus, at a minimum at least 4 months apart. *Id.* There the jury was instructed that "[c]rimes occur on different occasions only when each crime is a distinct criminal episode, rather than part of a single criminal episode," but can constitute a single occasion "if substantially connected by a common factor." Jury Instructions, (Doc. 172). The jury's finding aligns with *Erlinger's* reminder that no set distance or period of time requires a finding of separates offenses.

Similarly, in *United States v. Willis*, which post-dated *Erlinger*, the jury found that three robbery offenses which appeared to occur weeks apart were not separate occasions after being instructed that it "could consider a variety of factors, including the timing and location of the offenses, the character and relationship of the offenses to one another, whether they are similar or intertwined, whether they are separated by substantial gaps in time or significant intervening events, and whether they share a common scheme or purpose." Jury Instructions (Doc. 217), Jury Verdict Minutes (Doc. 216), No. 4:21-cr-548 (E.D. Mo. July 16, 2024). Echoing *Erlinger*, the jury was further instructed that "[a] single occasion may encompass multiple, temporally distinct activities," and that "[n]o particular lapse of time or distance between offenses automatically separates a single occasion from distinct ones." *Id.*

As these trial outcomes show, regardless of whether the *Erlinger*/*Wooden* test is identical to the Guidelines' test or the familiar analysis under the Federal Rules of Evidence of a defendant's "plan" or "course of conduct," the analysis is similar enough to indicate that reasonable people—indeed a jury—can find offenses that occurred months, or even years, apart to constitute a single occasion. As such, the absence of a jury in Mr. Campbell's case was harmful.

Mr. Campbell's prior drug offenses appear to have occurred within a nine-month span (see Panel Opinion, at 2-3), and—importantly—a federal district judge has previously concluded that these same three drug offenses are so closely related that they were part of either a common scheme or plan (the same language used in *Erlinger*) or the same course of conduct, and should be aggregated for sentencing purposes. Looking at the same offenses, a jury *might* find separate occasions, or (similar to Mr. Campbell's prior district court judge) *it might not*. As such, the government cannot prove beyond a reasonable doubt that the error was harmless.

### D. The remedy is resentencing without the uncharged and unproven ACCA enhancement.

As a remedy, this Court should remand for resentencing without the ACCA enhancement. *See Alleyne v. United States*, 570 U.S. 99, 117-18 (2013) (remanding for resentencing consistent with unenhanced jury verdict where judge, rather than jury, found "brandishing" element); *United States v. Pena*, 742 F.3d 508, 514-20 (1st Cir. 2014) (ordering that defendant be resentenced to drug crimes he pled to,

without death-resulting enhancement); *United States v. Hunt*, 656 F.3d 906, 916 (9th Cir. 2011) (*Apprendi* remand for sentencing "within the statutory range applicable given the facts that were admitted at the original change of plea hearing."); *United States v. Doe*, 297 F.3d 76, 93 (2d Cir. 2002) (same); *United States v. Jordan*, 531 F. App'x 995, 996–97 (11th Cir. 2013) (remanding so defendants could be resentenced "in accordance with *Alleyne*"); *see also United States v. Yancy*, 725 F.3d 596, 601 (6th Cir. 2013) (absent admissions of enhanced elements at his guilty plea, the court indicates defendant would have been resentenced without the enhancement); *Bell*, 37 F.4th at 1198 (because jeopardy attached when the guilty plea was accepted, reindictment for an aggravated offense would violate the Double Jeopardy clause). The Court should follow that path here.

## CONCLUSION

In consideration of the foregoing, Gerald Campbell respectfully petitions the Court for rehearing en banc or panel rehearing of the opinion in this case, and continues to request a remand for resentencing for the non-enhanced offense to which he pled guilty.

RESPECTFULLY SUBMITTED:

FEDERAL DEFENDER SERVICES OF
EASTERN TENNESSEE, INC.

BY:   /s/ *Erin P. Rust*
      Erin P. Rust
      Assistant Federal Defender

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, who may access this brief through the Court's electronic filing system.  Any parties not listed on the electronic filing receipt will be served by regular U.S. Mail, postage prepaid.

Dated this the 25th day of July, 2024.

 */s/ Erin P. Rust*
Erin P. Rust
Assistant Federal Defender